**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

RICHARD HOWZE, BRENDA WALTON,     :
CATHERINE ROTHWELL, and JENNY     :
CAREY, on behalf of themselves and all     :
others similarly situated,     :
    :
    Plaintiffs,     :
    :
vs.     :
    :
NESTLÉ USA, INC.,     :
    :
    Defendant.     :
    :

------------------------------------------------------- X

7:21-cv-06994-KMK

**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS**
**BY NESTLÉ USA, INC.**

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY**</u>
<u>**NESTLÉ USA, INC.**</u>

In accord with Local Rule 7.1, below is a memorandum of law in support of the concurrent

motion to dismiss by Defendant Nestlé USA, Inc. ("Nestlé").

Dated: January 18, 2022

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Dale J. Giali*

    Dale J. Giali (*pro hac vice*)
    Keri E. Borders (*pro hac vice*)
    *dgiali@mayerbrown.com*
    *kborders@mayerbrown.com*
    350 South Grand Avenue
    25th Floor
    Los Angeles, California  90071-1503
    Telephone:  (213) 229-9500
    Facsimile:  (213) 625-0248

    Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ........................................................................... 3

LEGAL STANDARD ........................................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.      Plaintiffs Do Not Plausibly Allege That The Products' Labeling Likely Would Deceive A Reasonable Consumer .......................................... 7

            A.      FDA Regulations Set The Parameters For, And Fully Support, Nestlé's 2-Gram Serving Size For Powdered Coffee Creamer ................. 7

            B.      Plaintiffs Do Not Challenge The Amount Of Powdered Coffee Creamer In The Products ........................................................... 8

            C.      All Of The Products Plaintiffs Bought Make Clear That The Servings-Per-Container Statement Is Based On A Serving Size Of 2 Grams ............................................................................................ 9

            D.      Plaintiffs Do Not Plausibly Allege That The Weight Of A Teaspoon Was Material To Their Buying Decisions ............................. 12

    II.     The Breach-Of-Warranty Claim Also Fails As A Matter Of Law For At Least Two Additional Reasons ........................................................... 14

    III.    The Fraud Claim Also Fails Because Plaintiffs Do Not Plausibly Allege Scienter ................................................................................................ 15

    IV.    Nestlé's Unopposed Request For Dismissal Of The Unjust-Enrichment Claim And The Injunctive-Relief Request Should Be Granted .......................... 16

CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................6

*Axon v. Citrus World, Inc.*,
    354 F.Supp.3d 170 (E.D.N.Y. 2018) ...................................................................7

*Barreto v. Westbrae Nat., Inc.*,
    518 F.Supp.3d 795 (S.D.N.Y. 2021)...........................................................6, 7, 11

*Barton v. Pret A Manger (USA) Ltd.*,
    535 F.Supp.3d 225 (S.D.N.Y. 2021)...................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020).................................................................................16

*Boshnack v. Widow Jane Distilleries, LLC*,
    2020 WL 3000358 (S.D.N.Y. June 4, 2020) ......................................................13

*Budhani v. Monster Energy Co.*,
    527 F.Supp.3d 667 (S.D.N.Y. 2021)...............................................................7, 16

*Cooper v. Anheuser-Busch, LLC*,
    2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021) ......................................................15

*Cosgrove v. Oregon Chai, Inc.*,
    520 F.Supp.3d 562 (S.D.N.Y. 2021)...................................................................15

*Daniel v. Mondelez Int'l, Inc.*,
    287 F.Supp.3d 177 (E.D.N.Y. 2018) ....................................................................6

*Davis v. Hain Celestial Grp., Inc.*,
    297 F.Supp.3d 327 (E.D.N.Y. 2018) ..................................................................11

*DiBartolo v. Abbott Labs*,
    914 F.Supp.2d 601 (S.D.N.Y. 2012)...................................................................14

*Dinan v. Sandisk, LLC*,
    2019 WL 2327923 (N.D. Cal. May 31, 2019) ...............................................10, 11

**TABLE OF CONTENTS**
(continued)

**Page**

*Ebin v. Kangadis Food Inc.*,
    2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ........................................................................14

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).........................................................................................6, 7, 9

*Greene v. Gerber Prods. Co.*,
    262 F.Supp.3d 38 (E.D.N.Y. 2017) ...................................................................................16

*Grossman v. Simply Nourish Pet Food Co. LLC*,
    516 F.Supp.3d 261 (E.D.N.Y. 2021) .................................................................................15

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F.Supp.3d 453 (S.D.N.Y. 2020)...........................................................................15, 16

*Jones v. Nutiva, Inc.*,
    2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ..................................................................3

*Kacocha v. Nestle Purina Petcare Co.*,
    2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ...................................................................3

*Koenig v. Boulder Brands, Inc.*,
    995 F.Supp.2d 274 (S.D.N.Y. 2014)................................................................................14

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)..............................................................................................3

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999)................................................................................................6

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006).........................................................................................7, 16

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F.Supp.3d 226 (S.D.N.Y. 2020)................................................................................12

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018).............................................................................................11

*Moore v. Trader Joe's Co.*,
    4 F.4th 8743 (9th Cir. 2021) ............................................................................................11

*Moreno v. Vi-Jon, Inc.*,
    2021 WL 5771229 (S.D. Cal. Dec. 6, 2021)....................................................................10

# TABLE OF CONTENTS
### (continued)

**Page**

*Moreno v. Vi-Jon, Inc.*,
   2021 WL 807683 (S.D. Cal. Mar. 3, 2021) .............................................................................10

*Pichardo v. Only What You Need, Inc.*,
   2020 WL 632775 (S.D.N.Y. Oct. 27, 2020) ......................................................................12, 13

*Piescik v. CVS Pharmacy, Inc.*,
   2021 WL 5996977 (S.D. Fla. Dec. 15, 2021) .........................................................................10

*Prem. Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009)....................................................................................................12

*Reynolds v. Lifewatch, Inc.*,
   136 F.Supp.3d 503 (S.D.N.Y. 2015) (Karas, J.) .....................................................................16

*Singleton v. Fifth Generation, Inc.*,
   2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .............................................................................3

*Sponchiado v. Apple Inc.*,
   2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ........................................................................10

*Steele v. Wegmans Food Mkts, Inc.*,
   472 F.Supp.3d 47 (S.D.N.Y. July 14, 2020) .............................................................................6

**Statutes**

21 U.S.C. § 343(e)(2)...........................................................................................................................9

N.Y. General Business Law § 349...........................................................................................6, 7, 12, 13

N.Y. General Business Law § 350...........................................................................................6, 7, 12, 13

N.Y. U.C.C. § 2–607(3)(a) ...............................................................................................................14

**Other Authorities**

21 C.F.R. § 101.7(a).............................................................................................................................9

21 C.F.R. § 101.12(b) .........................................................................................................................8

Fed. R. Civ. P. 9(b) .............................................................................................................................7

## MEMORANDUM OF LAW

## INTRODUCTION

For plaintiffs' complaint to survive, a reasonable consumer would have to be free to ignore an unambiguous clarifying statement on a product's front label and then claim deception as to the very thing the clarifying label statement clarifies. But the law is precisely the opposite and, therefore, plaintiffs fail to state a claim against Nestlé.

Plaintiffs allege that the labels of various sizes of Coffee-mate powdered coffee creamer products allegedly misled them about the number of servings in the container, i.e., they contain fewer servings in the package than the label states. As an example, plaintiffs claim that the 1000-gram (1kg) Coffee-mate Original, which is labeled as containing about 500 servings, actually contains 385 servings. But the trick in plaintiffs' theory is how they define a serving. The label of the products plaintiffs purchased make clear in at least *two* places—front-of-pack *and* in the Nutrition Facts box—that a serving is a ***2-gram teaspoon***. Plaintiffs, however, allege that a serving is the weight of a teaspoon measured by plaintiffs' attorneys, which, they allege, equals about 2.6 grams. *E.g.*, Compl. ¶ 7 (table showing the purported results from measurements by plaintiffs' counsel of the alleged weight of a teaspoon). Significantly, nowhere on the label (or elsewhere) is a serving defined as 2.6 grams of product, and the 1000-gram Coffee-mate Original absolutely has the number of labeled servings, i.e., 500, when using the serving size expressly stated on the label, i.e., *2-grams*, as even plaintiffs must acknowledge. It's also significant that plaintiffs do *not* challenge the overall stated net contents of 1000 grams, i.e., every consumer received the overall total amount of Coffee-mate stated on the label (this is not a short-weight or short-fill case).

Plaintiffs ignore the stated 2-gram serving (and the fully-realized 1000-gram net contents) and allege that a serving is a teaspoon and a teaspoon weighs 2.6 grams. At 2.6 grams per serving,

plaintiffs continue, the 1000-gram package does not contain 500 servings.

Because the front and back sides of the labels of the products plaintiffs bought inform reasonable consumers that the number of servings refers to the number of *2-gram servings*—and because all of the packages contain the amount of product declared on the front-of-pack net contents statement—plaintiffs cannot plausibly allege anything misleading about the stated number of servings. Consumers received exactly what was promised, i.e., 1000 grams of product that can make 500 2-gram servings.

Plaintiffs are left with a deception theory that depends on their attorneys weighing a teaspoon. But that can't state a claim. First, the label clearly states that the teaspoon serving being referenced in the servings-per-container statement is a *2-gram* teaspoon. Second, there is no basis whatsoever to assume a consumer knows or cares that a teaspoon of Coffee-mate powder might weigh more than that. Reasonable consumers don't measure out a perfect teaspoon when using powdered coffee creamer and don't buy product with any such measurement in mind. And, as plaintiffs' counsel readily acknowledged during the December 7 hearing (indeed, he used it as an argument in his clients' favor), reasonable consumers do not know—or care—how much a teaspoon of product weighs whether at the time of purchase or otherwise. On that record, the reasonable consumer standing in the grocery store aisle purchasing Coffee-mate necessarily would rely—if at all—on the statement made *on the label*, i.e., the 1000-gram package of Coffee-mate provides 500 *2-gram* teaspoon servings. The consumer's reliance on that statement would be 100% justified because that's exactly what the consumer receives. For this simple reason and others explained below, the reasonable consumer would not and cannot be deceived in the manner alleged, and plaintiffs' claims should be dismissed with prejudice.

2

### PLAINTIFFS' ALLEGATIONS

Plaintiffs allege (albeit in conclusory terms) that Nestlé Coffee-mate powdered coffee creamer products mislead reasonable consumers about the number of servings in each container. Plaintiffs allege buying the following different specific Coffee-mate products in different stores: Howze bought the 226-serving Original product; Walton bought the 311-serving Original product; Carey bought the 500-serving Original product; and Rothwell bought the 210-serving French Vanilla and Hazelnut products. Compl. ¶¶ 14-17.

The complaint includes pictures of the alleged "examples" of the products plaintiffs bought (Compl. ¶ 2), and, as each label image demonstrates, the labels have an asterisk next to the front-of-pack servings-per-container statement.[1] For example, the 1000 gram/500 servings Coffee-mate

---

[1] Nestlé respectfully requests that the Court take judicial notice of the full and legible images of the labels of the products pictured in the complaint and that plaintiffs allegedly bought, attached to this motion in the Declaration of Dale J. Giali ("Giali Decl."). In false-advertising actions over consumer products, courts frequently and properly take judicial notice of product labeling where a complaint relies on such labels. *E.g.*, *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *11 (S.D.N.Y. Aug. 12, 2016) (taking judicial notice of "packaging submissions . . . as all are "incorporated by reference" in the complaint); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *2–3 (N.D.N.Y. Jan. 12, 2016) (same). Judicial notice is particularly appropriate where, as here, the product labeling pictured in the complaint is incomplete or poor quality images. *E.g.*, *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *2 (N.D. Cal. Sept. 22, 2016) (taking judicial notice "of the more legible Product labels under the incorporation by reference doctrine"). Separately, judicial notice is appropriate because the labels are integral to plaintiffs' alleged false-advertising claims. In resolving motions to dismiss, courts may consider the complaint and "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). There can be no doubt here that the labels are integral to plaintiffs' claims or that the complaint "make[s] a clear, definite and substantial reference to" the labels. *Id.*; Compl. ¶¶ 2-3, 14-17.

O0riginal includes an asterisk at the "500 Servings" statement as shown here to the right. The asterisk corresponds to an associated statement on the left-most part of the front label informing reasonable consumers that the number of servings is based on a *2-gram* teaspoon, as shown below:



The same information provided in the front-of-pack statement is provided at the serving size declaration in the Nutrition Facts box, as shown to the left. *See also*, Compl. ¶ 7 & attendant picture.

Although plaintiffs allege in conclusory terms that "Defendant is systematically underfilling the Products to provide significantly fewer servings than represented" (Compl. ¶ 3), that does **not** accurately reflect plaintiffs' theory. Plaintiffs do not (and cannot) allege that any of the products contain less than the amount of powdered coffee creamer

4

declared in the net contents statement on the front of each product, which, as shown below, is 1kg or 1000 grams for the container with 500 servings.



Likewise, plaintiffs do not allege that the packages do not contain enough product to fulfill the servings-per-container promise based on a 2-gram serving. Rather, paragraph seven of the complaint and the attendant chart make clear that the crux of plaintiffs' claims is how many servings a consumer may get from that net contents. The chart purports to show the results of putative "testing" conducted by plaintiffs' counsel, who allege that they used a teaspoon and kitchen scale to weigh 1 teaspoon of some (but not all) of the products. *See* Compl. ¶¶ 6-7. Plaintiffs allege that their counsel purportedly determined that a teaspoon of the powdered coffee creamer weighs more than 2 grams. *Id.* Based on these allegations, plaintiffs claim that the labels "promis[e] consumers more servings of the Products than they receive." Compl. ¶ 12.

The complaint shows other labels on other Coffee-mate products, but plaintiffs do not allege buying those. For instance, plaintiffs include a photo of a 140-serving Hazelnut flavor. That product label declares the serving size in the Nutrition Facts box, though it does not also have the additional asterisk statement. Compl. ¶ 2 & attendant pictures. Every product purchased by a named plaintiff has both statements—the front-of-pack asterisk statement and the serving size declaration in in the Nutrition Facts box—and both clearly state that the servings-per-container statement is based on a 2-gram serving size.

Suing on behalf of themselves and putative New York and nationwide subclasses, plaintiffs claim breaches of N.Y. General Business Law §§ 349 and 350 (counts I and II, respectively), breach of express warranty (count III), unjust enrichment (count IV), and fraud (count V). In the complaint, plaintiffs demand monetary damages (including interest), injunctive and declaratory relief, and attorneys' fees. Compl. ¶¶ 62(b)-(h). In response to Nestlé's pre-motion letter, plaintiffs have abandoned the unjust-enrichment claim and the request for injunctive relief. ECF No. 12 at 3 n.2 ("Plaintiffs will not pursue their claims for unjust enrichment or injunctive relief.").

## LEGAL STANDARD

Stating a claim requires well-pleaded facts sufficient to plausibly show the plaintiff's right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Conclusory allegations, "bare assertions," or "'formulaic recitation of the elements'" of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (quoting *Twombly,* 550 U.S. at 555) (courts do not accept the truth of conclusory allegations). In determining if the complaint states a claim, the court may consider the well-pleaded facts "stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference," as well as "matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal citations and quotation marks omitted).

In this Circuit, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177 (E.D.N.Y. 2018) (no claim stated where product specified the "net weight, serving size, and number of servings"); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 806 (S.D.N.Y. 2021) (dismissing complaint because plaintiff's theory of deception was implausible as a matter

of law); *Steele v. Wegmans Food Mkts, Inc.*, 472 F.Supp.3d 47 (S.D.N.Y. July 14, 2020) (same).

Where, as here, plaintiffs allege fraud, Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although intent may be alleged generally, the Second Circuit has held that plaintiffs suing for fraud "must allege facts giving rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Budhani v. Monster Energy Co.*, 527 F.Supp.3d 667, 687 (S.D.N.Y. 2021).

## ARGUMENT

All of plaintiffs' claims (under Sections 349 and 350 of the GBL and for fraud and breach of express warranty)[2] fail because plaintiffs do not plausibly allege that Nestlé likely misled or deceived reasonable consumers about the number of servings in the Coffee-mate products that plaintiffs bought—and without any plausible claim of deception, plaintiffs do not (and cannot) state a claim as a matter of law. *See, e.g.*, *Fink*, 714 F.3d at 741 (stating GBL claims for false advertising requires plaintiffs to plausibly allege that the defendant's "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Axon v. Citrus World, Inc.*, 354 F.Supp.3d 170, 184-85 (E.D.N.Y. 2018) (if GBL claims fall, so too does breach-of-express-warranty claim); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 806 & 809 (S.D.N.Y. 2021) (if GBL claims fall, so too does fraud claim). For this reason and several others explained below, plaintiffs' claims should be dismissed with prejudice.

**I.    Plaintiffs Do Not Plausibly Allege That The Products' Labeling Likely Would Deceive A Reasonable Consumer.**

**A.    FDA Regulations Set The Parameters For, And Fully Support, Nestlé's 2-Gram Serving Size For Powdered Coffee Creamer.**

It is the federal Food & Drug Administration—not Nestlé—that provides the basis for the

---

[2] Plaintiffs have abandoned their unjust-enrichment claim. *See infra* Section IV.

2-gram serving size for powdered coffee creamer. Based on surveys of consumers' eating habits, the FDA has determined that the "reference amount customarily consumed" ("RACC") per eating occasion of "[c]ream or cream substitutes, powder" is 2 grams. 21 C.F.R. § 101.12(b). The FDA regulation further provides that the "reference amount[] *shall* be used as the basis for determining [the serving size]" for powdered coffee creamer. 21 C.F.R. § 101.12(b) (emphasis added).

All of this, in turn, means that Nestlé's labeled 2-gram serving size comes directly from binding FDA RACC and serving size regulations, and those same regulations are consistent with Nestlé's label statement about the number of servings in each of the products plaintiffs bought.

### B.     Plaintiffs Do Not Challenge The Amount Of Powdered Coffee Creamer In The Products.

Significantly, plaintiffs do not challenge the amount of powdered coffee creamer in the products. For example, the 1000 gram (1kg)/500 servings product clearly states on the front label, in the location and manner required by federal law, that the product's "NET WT" is "35.3 OZ (2.2 LB) 1kg" (*see* pages 5-6, *supra*) or 1000 grams. Plaintiffs do not and cannot dispute that the product contains 1000 grams of powdered coffee creamer or that any of the other products contain less powdered coffee creamer than the net contents statements declare. Of course, 1000 grams divided by 2 grams equals 500, the precise number of servings advertised on the 1000 gram product's label. *See, e.g.*, Compl. at p.4 (picture of the 100 ounce product). Plaintiffs dispute none of this and do not allege any facts to show how much coffee creamer they believe were actually in the containers they bought (if less than the net weight advertised on the front label of the products).

This is dispositive, because the underlying basis for plaintiffs' lawsuit is a frustrated expectation *about the amount of product they received*. For the reasons stated above, the theory is incompatible with the actual label statements they challenge and with the amount of product they received. Separately, plaintiffs' theory is at a disconnect with the various parts of a food label and

the purposes for the different information provided. As the FDA has recognized, a consumer should look to the *net content statement* (here, the 1000 grams statement) to understand the amount of product being purchased. *See, e.g.*, 21 U.S.C. § 343(e)(2) (label must bear a net contents statement to provide information about quantity); 21 C.F.R. § 101.7(a) (net quantity statement allows consumers to make value determinations based on amount). A serving size is for a different purpose, i.e., to compare nutrition information between like products.

### C.      All Of The Products Plaintiffs Bought Make Clear That The Servings-Per-Container Statement Is Based On A Serving Size Of 2 Grams.

Because the products contain the amount of powdered coffee creamer declared in the net contents statement, plaintiffs resort to a theory that the products contain fewer servings than labeled. To do that, however, plaintiffs must substitute the 2-gram teaspoon serving declaration that appears on the label twice with a different serving size, i.e., a 2.6 gram teaspoon, that doesn't appear on the label at all.

Plaintiffs' legal theory fails as a matter of law because plaintiffs cannot disregard the statements explaining that the serving size referred to is a teaspoon weighing 2 grams. *See supra* page 5 (showing asterisk statement); Compl. at 4 (same); Giali Decl., Exs. 1-5 (same). A consumer cannot plausibly claim deception where an informational statement—such as the asterisk and associated statement on the front label of Coffee-mate products that plaintiffs bought—accurately explains the very product characteristic being challenged. It is well settled in this Circuit that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

Consistent with *Fink*, courts throughout the country consistently explain that a plaintiff "cannot simply look to the statement on the front panel, ignore the asterisk, and claim [s]he has been misled." *Moreno v. Vi-Jon, Inc.*, 2021 WL 807683, at *6 (S.D. Cal. Mar. 3, 2021); *see also*

9

*Moreno v. Vi-Jon, Inc.*, 2021 WL 5771229, at \*6-\*8 (S.D. Cal. Dec. 6, 2021) (collecting decisions) ("Qualifying language in the challenged advertising making the meaning of the alleged misrepresentation clear have led district courts within the Ninth Circuit to grant motions to dismiss"); *Piescik v. CVS Pharmacy, Inc.*, --- F.Supp.3d ---, 2021 WL 5996977, at \*5 (S.D. Fla. Dec. 15, 2021) ("[A] reasonable consumer would not be expected to ignore the asterisk and the information it leads to"); *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at \*4 (N.D. Cal. Nov. 18, 2019) ("an asterisk or footnote expressly tells the consumer to look for supplemental information concerning the statement immediately preceding it").

For example, the court in *Dinan v. Sandisk, LLC*, 2019 WL 2327923 (N.D. Cal. May 31, 2019), dismissed a consumer's claim that the manufacturer falsely advertised a USB flash drive as containing 6.7% more storage space than it actually had. The alleged difference came down to the proper *measurement* of storage space, and *Dinan* recognized that the advertising could not confuse or mislead reasonable consumers as to how storage space was measured because, as a matter of law, an asterisk explained how the manufacturer measured storage. *Id.* at \*7-8. As *Dinan* explained, "asterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye . . . the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read." *Id.* at \*7.

So too here. The asterisk statement on Coffee-mate (separately, and together with the serving-size information found in the Nutrition Facts box) informs reasonable consumers that they're getting enough powdered coffee creamer to make the advertised number of *2-gram* servings (for example, in the case of the 1000 gram product consumers are getting enough product to make 500 2-gram servings).

As *Dinan* puts it, "[w]hat ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting." *Dinan*, 2019 WL 2327923, at *7; *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021) (as a matter of law, reasonable consumers cannot state a claim where they ignore "available information" that explains the product's characteristics). Because plaintiffs do not (and cannot) allege that the products contains fewer than the promised amount of powdered coffee creamer, plaintiffs cannot state a claim as a matter of law.

Although plaintiffs' pre-motion letter cited *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), and progeny to suggest that a plaintiff can invariably state a false-advertising claim despite the presence of a clarifying "asterisk or nutrition label" (ECF No. 12 at 3), neither *Mantikas* nor any other precedent gives reasonable consumers license to ignore or disregard statements on the label that clarify potential confusion. Rather, the precedent makes clear that the determination whether a label likely would mislead a reasonable consumer depends on the challenged label statement in context, and requires "consider[ing] the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636; *Barreto*, 518 F.Supp.3d at 802 ("[C]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole"); *Davis v. Hain Celestial Grp., Inc.*, 297 F.Supp.3d 327, 334 (E.D.N.Y. 2018) ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim."). As explained throughout this memorandum, the asterisk statement and the Nutrition Facts box (separately and together) inform reasonable consumers that the advertised number of servings is based on a 2-gram teaspoon. In light of this clarifying information, plaintiffs cannot plausibly claim any deception.

**D.     Plaintiffs Do Not Plausibly Allege That The Weight Of A Teaspoon Was Material To Their Buying Decisions.**

Unable to plausibly allege that the products contain less than the net weight of powdered coffee creamer promised or fewer than the advertised number of 2-gram teaspoons, plaintiffs are left with a theory, but not one that is actionable: The label allegedly misleads reasonable consumers about the weight of a teaspoon. This really is the crux of plaintiffs' claims and the basis for the complaint. *See, e.g.*, Compl. ¶ 7 (table purporting to show the results of purported "testing" conducted by plaintiffs' counsel).

Yet plaintiffs do not and cannot allege materiality. That is, plaintiffs do not (and cannot) allege that the weight of a teaspoon would matter to a reasonable consumer's decision to purchase powdered coffee creamer.[3] On the contrary, plaintiffs' counsel argued during the December 7 pre-motion hearing that reasonable consumers do not know—or care—how much a teaspoon of powdered coffee creamer weighs. Because materiality is an element of all of plaintiffs' remaining claims, plaintiffs cannot state any claim based on the legal theory that a teaspoon of Coffee-mate allegedly could weigh more than 2 grams. *See, e.g.*, *Pichardo v. Only What You Need, Inc.*, 2020 WL 632775, at *2 (S.D.N.Y. Oct. 27, 2020) (stating claims under GBL §§ 349 and 350 requires plausibly alleging that the defendant's act "was ***materially*** deceptive and misleading") (emphasis added); *Prem. Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (materiality is an element of fraud); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F.Supp.3d 226, 244 (S.D.N.Y. 2020) ("New York breach of express warranty claims require [i] a *material statement* amounting to a warranty" and "the buyer's *reliance* on this warranty," among other elements) (emphasis

---

[3] To be sure, plaintiffs allege the materiality of a different item ("the number of servings on the Product label"). Compl. ¶ 9. As already explained in this motion, plaintiffs' legal theory that the label misrepresents the number of servings fails as a matter of law because the label informs reasonable consumers that the advertised number of servings refers to the number of 2-gram teaspoons.

original).

Federal courts in New York consistently dismiss false-advertising claims for failure to state a claim where, as here, the plaintiff's legal theory depends on an alleged misrepresentation that a reasonable consumer would not find material to their purchasing decision. For example, in *Boshnack v. Widow Jane Distilleries, LLC*, 2020 WL 3000358 (S.D.N.Y. June 4, 2020), plaintiffs alleged that a bottle of whiskey distilled with mineral water "was misleading as to the source of the mineral water, which in fact came not from the Widow Jane Mine but from a nearby location." *Id.* at *3. Although the court held that the "pre-update label's reference to 'Water From The Widow Jane Mine' was misleading," it nevertheless dismissed plaintiffs' claims because the alleged misstatement "was not misleading 'in a material way,' as is required for liability under GBL §§ 349-50." *Id.* Similarly, in *Pichardo*, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020), this Court dismissed another food false-labeling action partly because the plaintiffs failed to allege any well-pleaded facts that showed the materiality of the alleged misstatement. *Id.* at *6 ("Plaintiffs have not explained why the amount of vanilla taste coming from vanilla extract is material."). Similar to *Pichardo* and *Boshnack*, the "Complaint contains no allegations that explain why a reasonable consumer would consider it material" (*Boshnack*, 2020 WL 3000538, at *3) whether a teaspoon of original powdered coffee creamer weighs 2.6 grams or 2 grams, when regardless of the answer the package contains the promised overall amount of coffee creamer and the promised number of 2-gram servings. It goes without saying that consumers do *not* meticulously follow the serving size when they use the product, so there is no basis to allege that the precise weight of a labeled serving size is material to the purchasing decision at all. But, if it were, the product delivers precisely what is promised. As a result, plaintiffs do not state a claim based on the theory that the products allegedly mislead consumers about the weight of a teaspoon.

13

## II.   The Breach-Of-Warranty Claim Also Fails As A Matter Of Law For At Least Two Additional Reasons.

*First*, plaintiffs cannot state a claim against Nestlé for breach of express warranty because they are not in privity with Nestlé. "[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured." *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290 (S.D.N.Y. 2014) (dismissing false-advertising claim because plaintiff did not buy the product directly from the defendant) (citing *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (Rakoff, J.)); *see also DiBartolo v. Abbott Labs*, 914 F.Supp.2d 601, 624-25 (S.D.N.Y. 2012) ("Privity is normally an essential element of a cause of action for express warranty, but the U.C.C. includes a personal injury exception.") (internal citation and quotation marks omitted).

Here, plaintiffs allege that they bought the coffee creamer from third-party retail stores, not Nestlé. Compl. ¶¶ 14-17 (alleging that plaintiffs bought the coffee creamer from "a Food Universe Marketplace," a "Family Dollar store," a "Columbus Foodmarket store," and a "Key Food store"). Because plaintiffs are not in privity with Nestlé and do not "claim[] to have been personally injured" (*Koenig*, 995 F.Supp.2d at 290), the warranty claim fails as a matter of law.

*Second*, plaintiffs fail to allege well-pleaded facts that plausibly show they satisfied a condition precedent for the breach-of-warranty claim. Under New York law, plaintiffs cannot state a claim for breach of warranty unless they provided the defendant with notice of the alleged breach before filing the lawsuit. *See* N.Y. U.C.C. § 2–607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *see also Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 245 (S.D.N.Y. 2021) (dismissing a breach of warranty claim because plaintiff failed to provide a notice of a breach of warranty); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 585

(S.D.N.Y. 2021) (same).

Plaintiffs' conclusory allegation that they "provided notice to Defendant . . . within a reasonable time following discovery of Defendant's breach" (Compl. ¶ 49) is a formulaic recitation of an element of the breach-of-warranty claim. "Because Plaintiffs do not allege specific facts in support of the allegation that they notified Defendant of the alleged breach within a reasonable time after its discovery, the Court [should] dismiss their express warranty claim." *Cooper v. Anheuser-Busch, LLC*, --- F. Supp.3d ---, 2021 WL 3501203, at *17 (S.D.N.Y. Aug. 9, 2021) (Karas J.) (dismissing breach-of-express-warranty claim for failure to allege specific facts about plaintiffs' alleged provision of notice to the defendant) (citing *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021) (dismissing a breach-of-warranty claim because plaintiff failed to provide factual allegations such as the date and method of pre-suit notice)). Plaintiffs' conclusory allegation (Compl. ¶ 49) that they provided Nestlé with pre-suit notice fares no better than the equally conclusory allegations this Court rejected in *Cooper*.

## III.   The Fraud Claim Also Fails Because Plaintiffs Do Not Plausibly Allege Scienter.

As explained in Section I, the fraud claim (and all of plaintiffs' other remaining claims) fail as a matter of law because plaintiffs do not plausibly allege anything false or misleading about the labeling of the products they bought. The fraud claim also fails for the additional reason that plaintiffs fail to plausibly allege (and cannot allege) "an intent to defraud." *E.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 472 (S.D.N.Y. 2020). Plaintiffs allege in conclusory terms that the allegedly "false and misleading representations and omissions . . . were intended to and actually induced Plaintiffs . . . to purchase the Products." *E.g.*, Compl. ¶ 60. But no well-pleaded facts support that conclusory allegation. At one point, plaintiffs attempt to use the "prominen[ce]" (Compl. ¶ 10) of the number-of-servings statements to satisfy their burden of "alleg[ing] facts giving rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290; *Budhani v. Monster*

*Energy Co.*, 527 F.Supp.3d 667, 687 (S.D.N.Y. 2021). But nothing about the label plausibly shows an intent to defraud. If anything, plaintiffs' allegations echo *Hesse*, which recognized that a manufacturer's labeling statements (even if allegedly misleading) do not plausibly show the manufacturer's scienter. 463 F.Supp.3d at 473. Simply put, it is not enough for plaintiffs to "couple[] a factual statement with a conclusory allegation of fraudulent intent." *Id.* (quoting *Greene v. Gerber Prods. Co.*, 262 F.Supp.3d 38, 73 (E.D.N.Y. 2017)). That's especially true where, as here, the alleged deceptive statement (a 2-gram serving) comes directly from governing FDA regulations about the amount of powdered coffee creamer consumed by the average consumer. *See* pages 7-8, *supra*.

## IV.   Nestlé's Unopposed Request For Dismissal Of The Unjust-Enrichment Claim And The Injunctive-Relief Request Should Be Granted.

Nestlé's pre-motion letter explained that where, as here, the unjust-enrichment claim merely duplicates plaintiffs' other claims, it should be dismissed. ECF No. 11 at 3 (citing *Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503, 525 (S.D.N.Y. 2015) (Karas, J.)); *Budhani v. Monster Energy Co.*, 527 F.Supp.3d 667, 688 (S.D.N.Y. 2021)). Likewise, Nestlé explained that plaintiffs lacked standing to sue for injunctive relief because they cannot plead any imminent, irreparable injury. ECF No. 11 at 3 (citing *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020)). In response, plaintiffs agreed to abandon their unjust-enrichment claim and their injunctive-relief requests. ECF No. 12 at 3 n.2 ("Plaintiffs will not pursue their claims for unjust enrichment or injunctive relief."). Nestlé's unopposed request for dismissal of the unjust-enrichment claim and the injunctive-relief requests should be granted.

<u>CONCLUSION</u>

For the reasons explained above, this action should be dismissed with prejudice.

Dated: January 18, 2022                              Respectfully submitted,

MAYER BROWN LLP


By: */s/ Dale J. Giali*
       Dale J. Giali (*pro hac vice*)
       Keri E. Borders (*pro hac vice*)
       *dgiali@mayerbrown.com*
       *kborders@mayerbrown.com*
       350 South Grand Avenue, 25th Floor
       Los Angeles, California  90071-1503
       Telephone:  (213) 229-9500
       Facsimile:  (213) 625-0248

       Attorneys for Defendant