IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD HOWZE, BRENDA WALTON, CATHERINE ROTHWELL, and JENNY CAREY, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br>     v.<br><br>NESTLE USA, INC.<br><br>            Defendant. | Case No. 7:21-cv-06994-KMK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Richard Howze, Brenda Walton, Catherine Rothwell, and Jenny Carey (collectively, "Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant Nestle USA, Inc. ("Nestle" or "Defendant").[1]

### NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Nestle Coffee Mate products (hereinafter, the "Products") in the United States.

2.      On the front of the Products' packaging, Defendant prominently represents that its Hazelnut, French Vanilla, Caramel Latte, Vanilla Caramel, and Chocolate Créme flavored Products contain "140 servings" and "210 servings," and that its Original flavored Products

---

[1] Plaintiffs are amending their complaint based on arguments not raised in Defendant's pre-motion letter.  *See* ECF No. 11.  Plaintiffs' Amended Complaint is timely under Fed. R. Civ. P. 15 (a)(1)(B) because it was filed 21 days after service of Defendant's motion to dismiss.

1

contain "226 servings," "311 servings," "500 servings," and "790 servings," respectively.[2]

Examples are depicted below:

 

---

[2] Defendant also distributes certain Coffee Mate products which do not prominently advertise the number of servings at the top of the packaging.  Those products are not the subject of this lawsuit.






3. Unfortunately for consumers however, these representations are false and misleading. Defendant is systemically underfilling the Products to provide significantly fewer servings than represented. This renders the Products' serving size representations false and misleading.

4. There is no ambiguity about how a "serving" is measured. The packaging repeatedly represents that that each serving equals "1 TSP."

 

5. Measuring the number of teaspoons contained within the Products requires no special expertise whatsoever. Anyone is capable of measuring this in their own kitchen.

6. Plaintiffs' counsel checked Defendant's math using a measuring spoon and a scale. The measuring teaspoon used was manufactured by Sur La Table. This spoon was selected because it was rated by the New York Times as the "most accurate" measuring spoon because it "regularly hit[] the exact measurements in our tests."[3] The scale used had a maximum capacity of 3 KG and measured to within a tenth of a gram. Plaintiffs' counsel ensured the accuracy of the scale by repeatedly testing it with several calibration weights.

7. For each Product, Plaintiffs' counsel weighed 1 teaspoon. Then, they measured the *net* weight of each of the products (in other words, exclusive of packaging), and performed simple division to determine the actual number of servings. The results are shown below:

| PRODUCT FLAVOR | REPRESENTED NUMBER OF SERVINGS | REPRESENTED NET WEIGHT (g) | MEASURED WEIGHT OF 1 SERVING (g) | MEASURED NET WEIGHT (g) | ACTUAL NUMBER OF SERVINGS (g) (net weight / weight of 1 tsp.) | PERCENT UNDERFILL |
|---|---|---|---|---|---|---|
| Caramel Latte | 140 | 425.2 | 3.6 | 415.1 | 115.3 | 17.64% |
| Vanilla Caramel | 140 | 425.2 | 3.4 | 433.3 | 127.4 | 9.00% |
| Chocolate Créme | 210 | 425.2 | 3.7 | 413.0 | 111.6 | 46.86% |
| Hazelnut | 210 | 425.2 | 3.4 | 446.1 | 131.2 | 37.52% |
| French Vanilla | 210 | 425.2 | 3.6 | 424.6 | 117.9 | 43.86% |
| The Original | 226 | 453.5 | 2.6 | 457.5 | 175.9 | 22.17% |
| The Original | 311 | 623.6 | 2.6 | 620.0 | 238.4 | 23.34% |
| The Original | 500 | 1kg | 2.6 | 1003.5 | 385.9 | 22.82% |

---

[3] *See* https://www.nytimes.com/wirecutter/reviews/best-measuring-spoons/; *see also id.* ("In our accuracy tests, Sur La Table's spoons were either dead-on or mere milligrams off the mark. This is as close to perfect as we found with any set we tried, and it's precise enough for anything you'd want to measure.").

8. The Products tested were not one-offs. This is a systemic issue that holds true across Defendant's Product line.

9. The fact that Defendant prominently advertises the number of servings on the Product label indicates that it knows that this information is material to reasonable consumers.

10. Moreover, the fact that Defendant prominently advertises this information necessitates that it either (1) measured the volume of the Products and intentionally misreported it; or (2) never bothered to measure the volume of the Products and reported a number of servings it knew was baseless. Either way, Defendant clearly knows it is lying to consumers.

11. Finally, it is impossible that as the world's largest food company, Defendant could be unaware of the actual volume of the Products it sells. Simply put, this is an instance of intentional fraud.

12. Defendant has sold millions of dollars of the Products by promising consumers more servings of the Products than they receive. Thus, Plaintiffs and the putative class are not getting what they bargained for.

13. Plaintiffs are purchasers of the Product who asserts claims on behalf of themselves and similarly situated purchasers of the Products for violations of the consumer protection laws of New York, fraud, and unjust enrichment.

## **PARTIES**

14. Plaintiff Richard Howze is a citizen of New York who resides in Bronx, New York. Mr. Howze purchased Nestle Coffee Mate® Original 226 servings from a Food Universe Marketplace store located in White Plains, New York, in July 2021 for approximately $5. Prior to purchase, Mr. Howze read the Product's labeling, including the representation that it contained "226 servings. Mr. Howze believed this statement to mean that the Product contained 226 teaspoon-size servings of coffee creamer based on the Product's representations. This

6

representation was material to Mr. Howze in purchasing the Product, and he relied on it in that he would not have purchased the Product on the same terms had he known that this representation was false and misleading. Unfortunately, the Product he purchased contained significantly fewer than 226 teaspoon-size servings.

15.     Plaintiff Brenda Walton is a citizen of New York who resides in Bronx, New York. Ms. Walton purchased Nestle Coffee Mate® Original 311 servings from a Family Dollar store located in Bronx, New York, in August 2021 for approximately $6. Prior to purchase, Ms. Walton read the Product's labeling, including the representation that it contained "311 servings." Ms. Walton believed this statement to mean that the Product contained 311 teaspoon-size servings of coffee creamer based on the Product's representations. This representation was material to Ms. Walton in purchasing the Product, and she relied on it in that she would not have purchased the Product on the same terms had she known that this representation was false and misleading. Unfortunately, the Product she purchased contained significantly fewer than 311 teaspoon-size servings.

16.     Plaintiff Catherine Rothwell is a citizen of New York who resides in New York, New York. Ms. Rothwell purchased Nestle Coffee Mate® French Vanilla 210 servings and Nestle Coffee Mate® Hazelnut 210 servings from a Columbus Foodmarket store located in New York, New York, in July 2021 for approximately $6 each. Prior to purchase, Ms. Rothwell read the Products' labeling, including the representations that they each contained "210 servings." Ms. Rothwell believed these statements to mean that the Products contained 210 teasppon-size servings of coffee creamer based on the Products' representations. This representation was material to Ms. Rothwell in purchasing the Products, and she relied on it in that she would not have purchased the Product on the same terms had she known that these representations were

7

false and misleading. Unfortunately, the Products she purchased contained significantly fewer than 210 teaspoon-size servings.

17. Plaintiff Jenny Carey is a citizen of New York who resides in Bronx, New York. Ms. Carey purchased Nestle Coffee Mate® Original 500 servings from a Key Food store located in Bronx, New York, in July 2021 for approximately $7. Prior to purchase, Ms. Carey read the Product's labeling, including the representation that it contained "500 servings." Ms. Carey believed this statement to mean that the Product contained 311 teaspoon-size servings of coffee creamer based on the Product's representations. This representation was material to Ms. Carey in purchasing the Product, and she relied on it in that she would not have purchased the Product on the same terms had she known that this representation was false and misleading. Unfortunately, the Product she purchased contained significantly fewer than 500 teaspoon-size servings.

18. Defendant Nestle USA, Inc. is a Delaware corporation with a principal place of business in Arlington, Virginia. Defendant manufactures, advertises, and distributes the Products throughout New York and the United States.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

21. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

**CLASS REPRESENTATION ALLEGATIONS**

22.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

23.     Plaintiffs also seek to represent a subclass defined as all Class members who purchased the Products in New York (the "New York Subclass").

24.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

25.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Products' serving sizes is false and misleading.

26.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading representations, purchased the Products, and suffered a loss as a result of that purchase.

27.     Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

28.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

29.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

30.     Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

31.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Products regarding the amounts of servings contained.

32.     The foregoing deceptive acts and practices were directed at consumers.

33.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the amounts of servings contained within the Products.

34. Plaintiffs and members of the New York Subclass were injured as a result because they overpaid for the Product on account of their misrepresentations regarding the amounts of servings contained.

35. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

36. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

37. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

38. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the amounts of servings contained on the labeling of the Products.

39. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

40. These misrepresentations have resulted in consumer injury or harm to the public interest.

41. As a result of this misrepresentation, Plaintiffs and members of the New York Subclass have suffered economic injury because they overpaid for the Product on account of their misrepresentations regarding the amounts of servings contained.

42. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach of Express Warranty

43. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

44. Plaintiffs bring this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

45. In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products contain "140 servings," "210 servings," "226 servings," "311 servings," "500 servings," and "790 servings," respectively.

46. In fact, the Products do not conform to the above-referenced representations because they contain significantly less servings than advertised.

47. Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they overpaid for the Product on account of their misrepresentations regarding the amounts of servings contained.

48. Pursuant to UCC § 2-607, on August 16, 2021, Plaintiffs Howze, Walton, and Carey provided written notice to Defendant via FedEx concerning the breaches of warranty described herein within a reasonable time of discovery Defendant's breach. On August 18, 2021, Plaintiff Rothwell provided written notice to Defendant via FedEx concerning the breaches of warranty described herein within a reasonable time of discovery of Defendant's breach.

Plaintiffs became aware of Defendant's beach in early August of 2021. Defendant has refused to redress the breaches identified in Plaintiffs' letters. True and correct copies of these letters are attached hereto as Exhibit A.

## COUNT IV
### Fraud

49. Plaintiffs hereby incorporates by reference and re-allege each and every allegation set forth above as though fully set forth herein.

50. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

51. As discussed above, Defendant misrepresented on the Products' labeling that they contain "140 servings," "210 servings," "226 servings," "311 servings," "500 servings," and "790 servings," respectively.

52. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant is the world's largest food company and is undoubtedly aware that it is shorting consumers. Defendant is also aware that serving size representations are important to consumers, as evinced by Defendant's decision to prominently display its serving size representations in enormous lettering on the front of the Products' packaging. Nonetheless, Defendant continues to sell its misrepresented Products unsuspecting consumers.

53. The false and misleading representations and omissions were made by Defendant, upon which Plaintiffs and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the proposed Class and New York Subclass to purchase the Products.

54. The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## RELIEF DEMANDED

55. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

    a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and New York Subclass members;

    b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

    c. For an order finding in favor of Plaintiffs, the nationwide Class, and the New York Subclass on all counts asserted herein;

    d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e. For prejudgment interest on all amounts awarded;

    f. For an order of restitution and all other forms of equitable monetary relief; and

    g. For an order awarding Plaintiffs and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 8, 2022                              Respectfully submitted,

                                                     **BURSOR & FISHER, P.A.**

                                                     By: */s/ Yitzchak Kopel*
                                                            Yitzchak Kopel

                    Yitzchak Kopel
                    Alec M. Leslie
                    888 Seventh Avenue
                    New York, NY 10019
                    Tel:  (646) 837-7150
                    Fax: (212) 989-9163
                    E-Mail:  ykopel@bursor.com
                              aleslie@bursor.com

*Attorneys for Plaintiffs*

**EXHIBIT A**

# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**  
**NEW YORK, NY 10019**  
**www.bursor.com**

Yitzchak Kopel  
Tel: **646.837.7127**  
Fax: **212.989.9163**  
ykopel@bursor.com

August 16, 2021

*Via Fed Ex*

Nestle USA, Inc.  
1812 North Moore St.  
Arlington, VA  22209

Re:   *Violation of N.Y. General Business Law ("G.B.L.") §§ 349, 350; U.C.C. §§ 2-313, 2-314; all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Nestle USA, Inc., ("You" or "Defendant") pursuant to numerous provisions New York law, including but not limited to N.Y.G.B.L. §§ 349 and 350, on behalf of our clients, Richard Howze, Brenda Walton, Lisa Greico, and Jenny Carey (hereinafter, "Plaintiffs").  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express warranties described herein.

You have participated in the marketing and sale of Nestle Coffee Mate® products (the "Products").  The Products' labeling represents that they contain "140 servings," "210 servings," "226 servings," "311 servings," "500 servings," and "790 servings," respectively.  Consumers are told on the packaging that each serving equals one teaspoon.  However, we have measured the volume and weight of the Products and have found that they contain significantly fewer servings than advertised.  Accordingly, these representations are false and misleading.

In July of 2021, Mr. Howze purchased Nestle Coffee Mate® Original 226 servings in the state of New York.  Prior to purchase, Mr. Howze reviewed the Product's labeling, and relied on Your representation regarding serving size.

In August of 2021, Ms. Walton purchased Nestle Coffee Mate® Original 311 servings in the state of New York.  Prior to purchase, Ms. Walton reviewed the Product's labeling, and relied on Your representation regarding serving size.

In July of 2021, Ms. Greico purchased Nestle Coffee Mate® Original 500 servings in the state of New York.  Prior to purchase, Ms. Greico reviewed the Product's labeling, and relied on Your representation regarding serving size.

In July of 2021, Ms. Carey purchased Nestle Coffee Mate® Original 500 servings in the state of New York.  Prior to purchase, Ms. Carey reviewed the Product's labeling, and relied on Your representation regarding serving size.

Plaintiffs are acting on behalf of a class defined as all persons in the United States who purchased the Products. Plaintiffs are also acting on behalf of a subclass of persons who purchased the Product in the State of New York.

To cure these defects, we demand that you make full restitution to all purchasers of the Products of all money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the design, development, and/or testing of the Products;

2. All documents concerning the advertisement, labeling, marketing, or sale of the Products;

3. All documents concerning communications with purchasers of the Products, including but not limited to customer complaints; and

4. All documents concerning your total revenue derived from sales of the Products in New York and the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Yitzchak Kopel

# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**  
**NEW YORK, NY 10019**  
**www.bursor.com**

YITZCHAK KOPEL  
Tel: **646.837.7127**  
Fax: **212.989.9163**  
ykopel@bursor.com

August 18, 2021

*Via Fed Ex*

Nestle USA, Inc.
1812 North Moore St.
Arlington, VA  22209

Re:   *Violation of N.Y. General Business Law ("G.B.L.") §§ 349, 350; U.C.C. §§ 2-313, 2-314; all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Nestle USA, Inc., ("You" or "Defendant") pursuant to numerous provisions New York law, including but not limited to N.Y.G.B.L. §§ 349 and 350, on behalf of our client, Catherine Rothwell (hereinafter, "Plaintiff").  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express warranties described herein.

You have participated in the marketing and sale of Nestle Coffee Mate® products (the "Products").  The Products' labeling represents that they contain "140 servings," "210 servings," "226 servings," "311 servings," "500 servings," and "790 servings," respectively.  Consumers are told on the packaging that each serving equals one teaspoon.  However, we have measured the volume and weight of the Products and have found that they contain significantly fewer servings than advertised.  Accordingly, these representations are false and misleading.

In July of 2021, Ms. Rothwell purchased Nestle Coffee Mate® French Vanilla 210 servings and Hazelnut 210 servings in the state of New York.  Prior to purchase, Ms. Rothwell reviewed the Products' labeling, and relied on Your representation regarding serving size.

Plaintiff is acting on behalf of a class defined as all persons in the United States who purchased the Products.  Plaintiff is also acting on behalf of a subclass of persons who purchased the Product in the State of New York.

To cure these defects, we demand that you make full restitution to all purchasers of the Products of all money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the design, development, and/or testing of the Products;

2. All documents concerning the advertisement, labeling, marketing, or sale of the Products;

3. All documents concerning communications with purchasers of the Products, including but not limited to customer complaints; and

4. All documents concerning your total revenue derived from sales of the Products in New York and the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Yitzchak Kopel