**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------ X
RICHARD HOWZE, BRENDA WALTON,      :
CATHERINE ROTHWELL, and JENNY      :
CAREY, on behalf of themselves and all  :
others similarly situated,         :
                                   :        7:21-cv-06994-KMK
                  Plaintiffs,      :
                                   :        MEMORANDUM OF LAW IN
                                   :        SUPPORT OF MOTION TO DISMISS
       vs.                         :        BY NESTLÉ USA, INC.
                                   :
NESTLÉ USA, INC.,                  :
                                   :
                  Defendant.       :
                                   :
------------------------------------------------------ X
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY NESTLÉ USA, INC.

In accord with Local Rule 7.1, Defendant Nestlé USA, Inc. ("Nestlé") respectfully submits

this memorandum of law in support of its concurrently filed motion to dismiss.

Dated: April 29, 2022                    Respectfully submitted,

                                         MAYER BROWN LLP


                                         By: */s/ Dale J. Giali*
                                             Dale J. Giali (*pro hac vice*)
                                             Keri E. Borders (*pro hac vice*)
                                             *dgiali@mayerbrown.com*
                                             *kborders@mayerbrown.com*
                                             350 South Grand Avenue
                                             25th Floor
                                             Los Angeles, California  90071-1503
                                             Telephone:  (213) 229-9500
                                             Facsimile:  (213) 625-0248

                                             Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ......................................................................... 3

LEGAL STANDARD........................................................................................... 6

ARGUMENT ....................................................................................................... 7

    I.     Plaintiffs Do Not Plausibly Allege That The Products' Labeling Likely Would Deceive A Reasonable Consumer .................................................... 8

          A.     FDA Regulations Set The Parameters For, And Fully Support, Nestlé's 2-Gram Serving Size For Powdered Coffee Creamer ................. 8

          B.     Plaintiffs Do Not Challenge The Overall Amount Of Coffee Creamer In The Products ................................................................. 8

          C.     Plaintiffs' Legal Theory Relies On An Inherently Subjective Measure That Appears Nowhere On The Label ........................................ 9

          D.     All Of The Products Plaintiffs Bought Make Clear That The Servings-Per-Container Statement Is Based On A Serving Size Of 2 Grams ................................................................................................. 10

          E.     Plaintiffs Do Not Plausibly Allege That The Weight Of A Teaspoon Was Material To Their Buying Decisions.............................. 13

    II.    The Breach-Of-Warranty Claim Also Fails Because Plaintiffs Did Not Buy The Product Directly From Nestlé ............................................................ 16

    III.    The Fraud Claim Also Fails Because Plaintiffs Do Not Plausibly Allege Scienter ................................................................................................. 17

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................6

*Axon v. Citrus World, Inc.,*
    354 F.Supp.3d 170 (E.D.N.Y. 2018) .............................................................8

*Barreto v. Westbrae Nat., Inc.,*
    518 F.Supp.3d 795 (S.D.N.Y. 2021) ....................................................7, 8, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................6

*Boshnack v. Widow Jane Distilleries, LLC,*
    2020 WL 3000358 (S.D.N.Y. June 4, 2020) ...........................................15, 16

*Budhani v. Monster Energy Co.,*
    527 F.Supp.3d 667 (S.D.N.Y. 2021) ......................................................7, 18

*Carcone v. Gordon Heating & Air Conditioning, Inc.,*
    212 A.D. 1017 (N.Y. 4th Dep't 1995) .........................................................17

*Cohen v. JP Morgan Chase & Co.,*
    498 F.3d 111 (2d Cir. 2007) ........................................................................10

*Colpitts v. Blue Diamond Growers,*
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) ........................................................19

*Cooper v. Anheuser-Busch, LLC,*
    2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021) ...............................................17

*Daniel v. Mondelez Int'l, Inc.,*
    287 F.Supp.3d 177 (E.D.N.Y. 2018) .............................................................7

*Dashnau v. Unilever Mfg. (US), Inc.,*
    529 F. Supp. 3d 235 (S.D.N.Y. 2021) ........................................................19

*Davis v. Hain Celestial Grp., Inc.,*
    297 F.Supp.3d 327 (E.D.N.Y 2018) ........................................................5, 13

*DiBartolo v. Abbott Labs,*
    914 F.Supp.2d 601 (S.D.N.Y. 2012) ...........................................................16

# TABLE OF CONTENTS
(continued)

**Page**

*Dinan v. Sandisk, LLC*,
2019 WL 2327923 (N.D. Cal. May 31, 2019) .......................................................................12

*Doulman v. Sears Roebuck & Co.*,
85 A.D. 2d 707 (N.Y. 2d Dep't 1981) ...................................................................................17

*Ebin v. Kangadis Food Inc.*,
2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ..................................................................16, 17

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)..............................................................................................7, 11

*Greene v. Gerber Prods. Co.*,
262 F.Supp.3d 38 (E.D.N.Y. 2017) ......................................................................................18

*Hesse v. Godiva Chocolatier, Inc.*,
463 F.Supp.3d 453 (S.D.N.Y. 2020).....................................................................................18

*Jones v. Nutiva, Inc.*,
2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) .......................................................................4

*Kacocha v. Nestle Purina Petcare Co.*,
2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ........................................................................4

*Koenig v. Boulder Brands, Inc.*,
995 F.Supp.2d 274 (S.D.N.Y. 2014).................................................................................16, 17

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)....................................................................................................4

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
199 F.3d 99 (2d Cir. 1999)......................................................................................................7

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..............................................................................................7, 18

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F.Supp.3d 226 (S.D.N.Y. 2020)......................................................................................14

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018)...................................................................................................13

*Mftrs. & Traders Trust Co. v. Stone Conveyor*,
91 A.D. 2d 849 (N.Y. 4th Dep't 1982) ..................................................................................18

# TABLE OF CONTENTS
(continued)

**Page**

*Moore v. Trader Joe's Co.*,
   4 F.4th 8743 (9th Cir. 2021) ...............................................................12

*Moreno v. Vi-Jon, Inc.*,
   2021 WL 5771229 (S.D. Cal. Dec. 6, 2021)...........................................11

*Moreno v. Vi-Jon, Inc.*,
   2021 WL 807683 (S.D. Cal. Mar. 3, 2021) .............................................11

*Pichardo v. Only What You Need, Inc.*,
   2020 WL 632775 (S.D.N.Y. Oct. 27, 2020) ......................................14, 16

*Piescik v. CVS Pharmacy, Inc.*,
   2021 WL 5996977 (S.D. Fla. Dec. 15, 2021) .........................................11

*Prem. Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009).................................................................14

*Randy Knitwear, Inc. v. Am. Cyanamid Co.*,
   11 N.Y. 2d 5 (1962) ...........................................................................17

*Sarr v. BEF Foods, Inc.*,
   No. 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020)....................................12

*Singleton v. Fifth Generation, Inc.*,
   2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)..............................................4

*Sponchiado v. Apple Inc.*,
   2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) .......................................11

*Steele v. Wegmans Food Mkts, Inc.*,
   472 F.Supp.3d 47 (S.D.N.Y. 2020) .........................................................7

*Turk v. Rubbermaid Inc.*,
   2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) .............................11, 12, 19

**Statutes**

21 U.S.C. § 343(e)(2)................................................................................9

N.Y. General Business Law § 349...........................................................6, 14

N.Y. General Business Law § 350...........................................................6, 14

NY U.C.C. § 2-313 ..................................................................................17

**TABLE OF CONTENTS**
(continued)

Page

**Other Authorities**

21 C.F.R. § 101.7(a)...........................................................................................................9

21 C.F.R. § 101.9(g)(7)....................................................................................................10

21 C.F.R. § 101.12(b)........................................................................................................8

21 C.F.R. § 101.12(b)(2)....................................................................................................8

Fed. R. Civ. P. 9(b)...........................................................................................................7

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs' amended complaint (ECF No. 19)—challenging the amount of servings in a Coffee-mate powder container—compounds the defects that Nestlé identified in its motion to dismiss the original complaint. Plaintiffs' claims still warrant dismissal for the straightforward reason that the front panels of the challenged labels provide the unambiguous clarifying statement that the servings being referred to



are *2-gram servings*. The same information is provided in the ubiquitous Nutrition Facts box (where consumers know to look for such information). What's more, Nestlé didn't make-up the 2-gram serving. It comes directly from FDA regulations of the amount of powder coffee creamer customarily consumed by consumers in a single occasion.

Under New York law, reasonable consumers are held to these clarifying label statements, and they are not free to sue for deception as to the very issue that the statements clarify. But that's exactly what plaintiffs are trying to do here. To avoid dismissal, plaintiffs' amended complaint is forced to claim that plaintiffs believed the phrase "500 servings*" "mean[s] that the Product contained 500 teaspoon-size servings of coffee creamer," without *any* reference whatsoever to the 2 grams that the label clearly states. First Amended Compl. ("FAC") ¶¶ 14-17. Plaintiffs' counsel then provides their *own* definition of what a teaspoon-size serving of Coffee-mate is, i.e., an amount that weighs 2.6 grams. FAC ¶¶ 7, 14-17. But the label *never* uses the phrase "teaspoon-size servings" and *never* claims that a serving is 2.6

grams. The only weight the label specifically references (at least twice) for a serving is 2 grams, the FDA's determination of the amount of powder coffee creamer customarily consumed by consumers in a single occasion.

Needless to say, plaintiffs cannot state a claim by rewriting the label. And here the re-write is neither plausible nor logical. A teaspoon is a measure of *volume*, not weight. Trying to provide the weight of a volume of powder product such as Coffee-mate is an entirely *subjective* endeavor. For example, a teaspoon of the powder might be level, mounded, or heaping. The powder might be sifted/airy, slightly compacted, or fully compacted. The consumer might use an ordinary kitchen spoon or a precise measuring spoon, or they might pour the powder directly into their coffee. Each of those potential "teaspoon" scenarios, and others like them, will lead to *different* weights for the volume of Coffee-mate. Addressing that precise issue, Coffee-mate, in multiple places on the label, provides an objective declaration to consumers of what Nestlé means when it refers to a serving, i.e., *2 grams* of product. In that way, the label forecloses (in the most accurate and clearest way) possible confusion about the amount of product in a serving and the number of servings in each container.

Plaintiffs, on the other hand, allege that the 1000-gram (1kg) Coffee-mate container, which is labeled as containing about 500 servings, actually contains 385 servings. Again, though, the trick in plaintiffs' theory is how they define a serving. Instead of relying on the criteria for what constitutes a serving of powdered coffee creamer, plaintiffs substitute the weight their attorneys came up with when they measured a teaspoon of product, which they allege is about 2.6 grams. *E.g.*, FAC ¶ 7 (table showing the purported results from measurements by plaintiffs' counsel of the alleged weight of a teaspoon). Significantly, nowhere on the label (or elsewhere) is a serving defined as 2.6 grams of product. The 1000-gram Coffee-mate contains the number of labeled

servings, i.e., 500, when using the serving size expressly stated on the label, i.e., 2 grams. It's also significant that plaintiffs do *not* challenge the overall stated net contents of the product, i.e., 1000 grams. Every consumer received the overall total net contents of Coffee-mate stated on the label.

Because the front and back sides of the products that plaintiffs bought inform reasonable consumers that the number of servings refers to the number of *2-gram servings*—and because all of the packages contain the overall amount of product declared on the front-of-pack net contents statement—plaintiffs cannot plausibly allege anything misleading about the stated number of servings or that they received less than promised or expected. Consumers received exactly what was promised, e.g., 1000 grams of product that can make 500 2-gram servings.

Finally, consumers don't buy Coffee-mate powder with any measurement in mind other than the labeled 2-gram serving size, as plaintiffs' counsel readily acknowledged at the December 7, 2021 hearing. If the consumer cared about the serving size while standing in the grocery store aisle considering purchasing Coffee-mate, the consumer necessarily would rely on the statements made *on the label*, i.e., the 1000-gram package of Coffee-mate provides 1000 grams of product and 500 ***2-gram*** teaspoon servings. The consumer's reliance on the actual label statements would be 100% justified because that's exactly what the consumer would receive. For these simple reasons and others explained below, the reasonable consumer would not and cannot be deceived in the manner alleged, and plaintiffs' claims should be dismissed with prejudice.

## **PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege (albeit in conclusory terms) that Nestlé Coffee-mate powder coffee creamer products mislead reasonable consumers about the number of servings in each container. Plaintiffs allege buying the following different specific Coffee-mate products in different stores: Howze bought the 226-serving Original product; Walton bought the 311-serving Original product;

3

Carey bought the 500-serving Original product; and Rothwell bought the 210-serving French Vanilla and Hazelnut products. FAC ¶¶ 14-17.

The complaint includes pictures of the alleged "examples" of the products plaintiffs bought (FAC ¶ 2), and, as each label image demonstrates, the labels have an asterisk next to the front-of-pack servings-per-container statement.[1] For example, the 1000 gram/500 servings Coffee-mate Original includes an asterisk at the "500 Servings" statement, as shown to the right. The asterisk corresponds to an associated statement on the left-most part of the front label informing reasonable consumers that the number of servings is based on a



---

[1] Nestlé respectfully requests that the Court take judicial notice of the full and legible images of the labels of the products pictured in the complaint and that plaintiffs allegedly bought, attached to this motion in the Declaration of Dale J. Giali ("Giali Decl."). In false-advertising actions over consumer products, courts frequently and properly take judicial notice of product labeling where a complaint relies on such labels. *E.g.*, *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *11 (S.D.N.Y. Aug. 12, 2016) (taking judicial notice of "packaging submissions . . . as all are 'incorporated by reference" in the complaint); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *2–3 (N.D.N.Y. Jan. 12, 2016) (same). Judicial notice is particularly appropriate where, as here, the product labeling pictured in the complaint is incomplete or poor quality images. *E.g.*, *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *2 (N.D. Cal. Sept. 22, 2016) (taking judicial notice "of the more legible Product labels under the incorporation by reference doctrine"). Separately, judicial notice is appropriate because the labels are integral to plaintiffs' alleged false-advertising claims. In resolving motions to dismiss, courts may consider the complaint and "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). There can be no doubt here that the labels are integral to plaintiffs' claims or that the complaint "make[s] a clear, definite and substantial reference to" the labels. *Id.*; FAC ¶¶ 2-3, 14-17.

*2-gram* teaspoon, as shown here:



The same information provided in the front-of-pack statement is provided at the serving size declaration in the Nutrition Facts box, as shown to the right, in a location consumer know to look at for such information. *Davis v. Hain Celestial Grp., Inc*., 297 F.Supp.3d 327, 337 (E.D.N.Y 2018) (consumers are "trained" to look at nutrition facts panel); *see also*, FAC ¶ 4 & attendant picture.

Although plaintiffs allege in conclusory terms that "Defendant is systematically underfilling the Products to provide significantly fewer servings than represented" (FAC ¶ 3), that does ***not*** accurately reflect plaintiffs' theory. Plaintiffs do not (and cannot) allege that any of the products contain less than the amount of powdered coffee creamer declared in the net contents statement on the front of each product, which, as shown below, is 1kg or 1000 grams for the container with 500 servings. Likewise, plaintiffs do not allege that the packages do not contain enough product to fulfill the servings-per-container promise based on a

2-gram serving. Rather, paragraph seven of the first amended complaint and the attendant chart makes clear that the crux

of plaintiffs' claims is how many servings a consumer may get from that net contents. The chart

purports to show the results of putative "testing" conducted by plaintiffs' counsel, who allege that

they used a teaspoon and kitchen scale to weigh 1 teaspoon of some (but not all) of the products.

*See* FAC ¶¶ 6-7. Plaintiffs allege that their counsel purportedly determined that a teaspoon of the

powder coffee creamer weighs more than 2 grams. *Id.* Based on these allegations, plaintiffs claim

that the labels "promis[e] consumers more servings of the Products than they receive." FAC ¶ 12.

The complaint shows other labels on other Coffee-mate products, but plaintiffs do not

allege buying those. For instance, plaintiffs include a photo of a 140-serving Hazelnut flavor. To

be sure, while that product label clearly declares the 2-gram serving size in the Nutrition Facts

box, it does not have the additional asterisk statement. FAC ¶ 2 & attendant pictures. But every

product purchased by a named plaintiff has *both* statements—the front-of-pack asterisk statement

and the serving size declaration in the Nutrition Facts box—and both clearly state that the servings-

per-container statement is based on a 2-gram serving size.

Suing on behalf of themselves and putative New York and nationwide subclasses, plaintiffs

allege breaches of N.Y. General Business Law §§ 349 and 350 (counts I and II, respectively),

breach of express warranty (count III), and fraud (count IV). For the reasons explained below, all

of plaintiffs' claims should be dismissed with prejudice.

## LEGAL STANDARD

Stating a claim requires well-pleaded facts sufficient to plausibly show the plaintiff's right

to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Conclusory allegations, "bare

assertions," or "'formulaic recitation of the elements'" of a claim will not suffice. *Ashcroft v. Iqbal*,

556 U.S. 662, 680-81 (2009) (quoting *Twombly,* 550 U.S. at 555) (courts do not accept the truth

of conclusory allegations). In determining if the complaint states a claim, the court may consider

the well-pleaded facts "stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference," as well as "matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal citations and quotation marks omitted).

In this Circuit, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177 (E.D.N.Y. 2018) (no claim stated where product specified the "net weight, serving size, and number of servings"); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 806 (S.D.N.Y. 2021) (dismissing complaint because plaintiff's theory of deception was implausible as a matter of law); *Steele v. Wegmans Food Mkts, Inc.*, 472 F.Supp.3d 47 (S.D.N.Y. 2020) (same).

Where, as here, plaintiffs allege fraud, Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although intent may be alleged generally, the Second Circuit has held that plaintiffs suing for fraud "must allege facts giving rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Budhani v. Monster Energy Co.*, 527 F.Supp.3d 667, 687 (S.D.N.Y. 2021).

## ARGUMENT

All of plaintiffs' claims fail because plaintiffs do not plausibly allege that Nestlé likely misled or deceived reasonable consumers about the number of servings in the Coffee-mate products that plaintiffs bought—and without any plausible claim of deception, plaintiffs do not (and cannot) state a claim as a matter of law. *See, e.g., Fink*, 714 F.3d at 741 (GBL claims for false advertising require plaintiffs to plausibly allege that the defendant's "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the

circumstances"); *Axon v. Citrus World, Inc.*, 354 F.Supp.3d 170, 184-85 (E.D.N.Y. 2018) (if GBL claims fall, so too does breach-of-express-warranty claim); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 806 & 809 (S.D.N.Y. 2021) (if GBL claims fall, so too does fraud claim). For this reason and several others explained below, plaintiffs' claims should be dismissed with prejudice.

## I.     Plaintiffs Do Not Plausibly Allege That The Products' Labeling Likely Would Deceive A Reasonable Consumer.

### A.     FDA Regulations Set The Parameters For, And Fully Support, Nestlé's 2-Gram Serving Size For Powdered Coffee Creamer.

It is the federal Food & Drug Administration—not Nestlé—that provides the basis for the 2-gram serving size for powder coffee creamer. Based on surveys of consumers' eating habits, the FDA has determined that the "reference amount customarily consumed" ("RACC") per eating occasion of "[c]ream or cream substitutes, powder" is 2 grams. 21 C.F.R. § 101.12(b). The FDA regulation further provides that the "reference amount[] *shall* be used as the basis for determining [the serving size]" for powdered coffee creamer. 21 C.F.R. § 101.12(b)(2) (emphasis added).

All of this, in turn, means that Nestlé's labeled 2-gram serving size is not a made-up number, but rather comes directly from binding FDA RACC and serving size regulations, and those same regulations are consistent with Nestlé's label statement about the number of servings in each of the products plaintiffs bought.

### B.     Plaintiffs Do Not Challenge The Overall Amount Of Coffee Creamer In The Products.

Significantly, plaintiffs do not challenge the amount of coffee creamer in the products. For example, the 1000 gram (1kg)/500 servings product declares on the front label, in the location and manner required by federal law, that the product's "NET WT" is "35.3 OZ (2.2 LB) 1kg" (*see* page 5, *supra*) or 1000 grams. Plaintiffs do not and cannot dispute that the product contains 1000 grams of coffee creamer or that any of the other products contain less coffee creamer than the net

contents statements declare. Of course, 1000 grams divided by 2 grams equals 500, the precise number of servings advertised on the 1000-gram product's label. *See, e.g.*, FAC at p. 4 (picture of the 1000-ounce product). Plaintiffs dispute none of this and do not allege any facts to show how much coffee creamer they believe was actually in the containers they bought (if less than the net weight advertised on the front label of the products).

This alone is dispositive, because the underlying basis for plaintiffs' lawsuit is a frustrated expectation *about the amount of product they received*. For the reasons stated above, the theory is incompatible with the actual label statements that plaintiffs challenge and with the amount of product they actually received. Separately, plaintiffs' theory is at a disconnect with the various parts of a food label and the purposes for the different information provided. As FDA has recognized, a consumer should look to the *net content statement* (here, the 1000 grams statement) to understand the amount of product being purchased. *See, e.g.*, 21 U.S.C. § 343(e)(2) (label must bear a net contents statement to provide information about quantity); 21 C.F.R. § 101.7(a) (net quantity statement allows consumers to make value determinations based on amount). A serving size is for a different purpose, i.e., to compare nutrition information between like products.

### C.   Plaintiffs' Legal Theory Relies On An Inherently Subjective Measure That Appears Nowhere On The Label.

As plaintiffs acknowledge, the product labels say, in pertinent part, that the respective purchased products contain a specific number of servings, for example "226 Servings*." *E.g.*, FAC ¶ 14. Plaintiffs allege that they "believed this statement to mean that the Product contained 226 teaspoon-size servings of coffee creamer based on the Product's representations." *Id.* But the phrase "teaspoon-size servings" is a phrase invented by plaintiffs' lawyers that appears nowhere on the label. To make matters worse, what a "teaspoon-size serving" means is inherently subjective because a teaspoon is a measurement of volume, not weight. Depending on the particular

9

circumstances, the weight of a teaspoon-sized volume of Coffee-mate will vary. The powder can be level, mounded, or heaping. The powder can be very compacted, lightly compacted, sifted/airy. Some consumers might use an irregularly shaped kitchen spoon, while others might use a precise measure spoon. And, of course, many consumers will not use a spoon at all; they will pour the product right from the container into the coffee.

By declaring the precise 2-gram weight of a serving, the product label provides the precise information a consumer would need to understand the amount in a serving (assuming the consumer cares about such things) and to resolve the inherent subjectivity detailed above. Indeed, the FDA regulations specify that compliance with the labeling requirements is dependent on "the metric measure specified in the label statement of serving size." 21 C.F.R. § 101.9(g)(7). The use of a weight measurement (here, 2 grams) eliminates the subjectivity inherent in measuring a product with household tools designed for measuring volume, such as teaspoons. Plaintiffs cannot state a claim by ignoring the objective, clarifying statement in favor of their subjective interpretations of what the label meant by "226 Servings*." *See, e.g.*, *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (explaining that New York law has "adopted an objective definition of 'misleading").

**D.     All Of The Products Plaintiffs Bought Make Clear That The Servings-Per-Container Statement Is Based On A Serving Size Of 2 Grams.**

Plaintiffs substitute the declared 2-gram serving size that appears twice on the label with a different serving size—a 2.6 gram teaspoon—that doesn't appear on the label at all. Indeed, a principal revision in plaintiffs' amended complaint is the addition of the phrase "teaspoon-size servings," which likewise never appears on the label.

Plaintiffs' legal theory fails as a matter of law because plaintiffs cannot disregard the actual on-label statements explaining that the serving size refers to a teaspoon weighing 2 grams. *See*

FAC at p.4; Giali Decl., Exs. 1-5 (same). A consumer cannot plausibly claim deception where an informational statement—such as the asterisk and associated statement on the front label of Coffee-mate products that plaintiffs bought—accurately explains the very product characteristic being challenged. It is well settled in this Circuit that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). For instance, in *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *7 (S.D.N.Y. Mar. 21, 2022) (Karas, J.), this Court recently dismissed a claim that a DuraChill cooler misled reasonable consumers into thinking the cooler would hold ice "for a full five days or more with normal use." *Id.* That claim failed as a matter of law in part because the label's statement that it would retain ice for "5 days" was "accompanied by an asterisk leading to another statement 'which qualifies the '5 day' claim by indicating that this was at 90 degrees Fahrenheit and 'under test conditions.'" *Id.* & n.3.

Consistent with *Fink* and *Turk*, courts throughout the country consistently explain that a plaintiff "cannot simply look to the statement on the front panel, ignore the asterisk, and claim [s]he has been misled." *Moreno v. Vi-Jon, Inc.*, 2021 WL 807683, at *6 (S.D. Cal. Mar. 3, 2021); *see also Moreno v. Vi-Jon, Inc.*, 2021 WL 5771229, at *6-8 (S.D. Cal. Dec. 6, 2021) (collecting decisions) ("Qualifying language in the challenged advertising making the meaning of the alleged misrepresentation clear have led district courts within the Ninth Circuit to grant motions to dismiss"); *Piescik v. CVS Pharmacy, Inc.*, --- F.Supp.3d ---, 2021 WL 5996977, at *5 (S.D. Fla. Dec. 15, 2021) ("[A] reasonable consumer would not be expected to ignore the asterisk and the information it leads to"); *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) ("an asterisk or footnote expressly tells the consumer to look for supplemental information concerning the statement immediately preceding it").

11

For example, the court in *Dinan v. Sandisk, LLC*, 2019 WL 2327923 (N.D. Cal. May 31, 2019), dismissed a consumer's claim that the manufacturer falsely advertised a USB flash drive as containing 6.7% more storage space than it actually had. The alleged difference came down to the proper measurement of storage space, and *Dinan* recognized that the advertising could not confuse or mislead reasonable consumers as to how storage space was measured because, as a matter of law, ***an asterisk explained how the manufacturer measured storage***. *Id.* at *7-8. As *Dinan* explained, "asterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye . . . the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read." *Id.* at *7.

So too here. The asterisk statement on Coffee-mate (separately, and together with the serving-size information found in the Nutrition Facts box) informs reasonable consumers that they are getting enough powder coffee creamer to make the advertised number of *2-gram* servings (for example, in the case of the 1000 gram product consumers are getting enough product to make 500 2-gram servings).

As *Dinan* puts it, "[w]hat ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting." *Dinan*, 2019 WL 2327923, at *7; *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021) (as a matter of law, reasonable consumers cannot state a claim where they ignore "available information" that explains the product's characteristics); *Turk*, 2022 WL 836894, at *7 ("[I]n determining whether a reasonable consumer would be misled[,] the Court must consider the entire context of the package.") (quoting *Sarr v. BEF Foods, Inc.*, No. 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). Because plaintiffs do not (and cannot) allege that the products contain less than the promised amount of powdered coffee creamer,

plaintiffs cannot state a claim as a matter of law.

Although plaintiffs' initial pre-motion letter cited *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) and progeny to suggest that a plaintiff can invariably state a false-advertising claim despite the presence of a clarifying "asterisk or nutrition label" (ECF No. 12 at 3), neither *Mantikas* nor any other precedent gives reasonable consumers license to ignore or disregard statements on the label that clarify potential confusion. Rather, the precedent makes clear that the determination whether a label likely would mislead a reasonable consumer depends on the challenged label statement in context and requires "consider[ing] the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636; *Barreto*, 518 F.Supp.3d at 802 ("[C]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole"); *Davis*, 297 F.Supp.3d at 334 ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim."). As explained throughout this memorandum, the asterisk statement and the Nutrition Facts box (separately and together) inform reasonable consumers that the advertised number of servings is based on a 2-gram teaspoon. In light of this clarifying information, plaintiffs cannot plausibly claim any deception.

Nestlé expects plaintiffs to oppose this motion by continually pointing to the word "teaspoon" and arguing that the word teaspoon somehow deceived plaintiffs that the amount of a serving is something different than 2 grams. For the reasons already stated in this motion, however, that is not plausible. Not only is a teaspoon of Coffee-mate—especially how much a teaspoon of product weighs—a subjective concept given the nature of dry powder, but consumers simply don't have an understanding of what a teaspoon of Coffee-mate weighs. So, while plaintiffs' attorneys

came up with 2.6 grams, the reasonable consumer does not think about 2.6-gram servings when making a purchase, and nothing in plaintiffs' first amended complaint alleges otherwise. If anything, the reasonable consumer is thinking about the as-declared-on-the-label 2-gram serving.

### E.   Plaintiffs Do Not Plausibly Allege That The Weight Of A Teaspoon Was Material To Their Buying Decisions.

Plaintiffs' "teaspoon-sized serving" theory is not actionable for an additional reason. Plaintiffs assert that the label allegedly misleads reasonable consumers about the weight of a teaspoon. *See, e.g.*, FAC ¶ 7 (table purporting to show the results of purported "testing" conducted by plaintiffs' counsel). But plaintiffs do not (and cannot) allege that the weight of a teaspoon would matter to a reasonable consumer's decision to purchase powdered coffee creamer. As plaintiffs' counsel readily acknowledged during the December 7, 2021 pre-motion hearing, reasonable consumers do not know—or care—how much a teaspoon of powdered coffee creamer weighs. Because materiality is an element of all of plaintiffs' remaining claims, plaintiffs cannot state any claim based on the legal theory that a teaspoon of Coffee-mate allegedly could weigh more than 2 grams. *See, e.g.*, *Pichardo v. Only What You Need, Inc.*, 2020 WL 632775, at *2 (S.D.N.Y. Oct. 27, 2020) (stating claims under GBL §§ 349 and 350 requires plausibly alleging that the defendant's act "was ***materially*** deceptive and misleading") (emphasis added); *Prem. Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (materiality is an element of fraud); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F.Supp.3d 226, 244 (S.D.N.Y. 2020) ("New York breach of express warranty claims require [i] a *material statement* amounting to a warranty" and "the buyer's *reliance* on this warranty," among other elements) (emphasis in original).

To be sure, plaintiffs allege the conclusory allegation that they interpreted the labeling statement (e.g., "226 servings*" on the 226-serving product) "to mean that the Product contained 226 teaspoon-size servings" and that this alleged "representation was material to [plaintiffs] in

14

purchasing the product." FAC ¶¶ 14-17. Not only does the phrase "teaspoon-size servings" appear nowhere on the label, but plaintiffs also fail to allege any well-pleaded facts supporting their conclusory allegation of materiality. For instance, none of the plaintiffs even alleges that they ever measured the product with a teaspoon. On the contrary, the only person alleged to have used a teaspoon for measurement is plaintiffs' counsel. FAC ¶¶ 6-7.

For this argument, it is important to remember that plaintiffs are *not* alleging that the Coffee-mate products they purchased were in any way *short-filled*. Each container had the amount of product reflected in the net contents statements. Their theory is that they did not receive the number of servings based on their attorneys' weighing of a teaspoon of product. But how a given quantity of product (1000 grams) is sub-divided in an artificial concept of "servings" is not material to a consumer. This is especially true given that consumers do not consume the product strictly by the serving size. That issue is exacerbated here given that the serving size is listed accurately at 2 grams and a "teaspoon" worth of Coffee-mate is an inherently subjective concept, especially when trying to convert that volume measurement to weight.

Federal courts in New York consistently dismiss false-advertising claims for failure to state a claim where, as here, the plaintiff's legal theory depends on an alleged misrepresentation (here, how much a teaspoon of Coffee-mate powder weighs where the consumer is getting all the Coffee-mate the consumer paid for) that a reasonable consumer would not find material to their purchasing decision. For example, in *Boshnack v. Widow Jane Distilleries, LLC*, 2020 WL 3000358 (S.D.N.Y. June 4, 2020), plaintiffs alleged that a bottle of whiskey distilled with mineral water "was misleading as to the source of the mineral water, which in fact came not from the Widow Jane Mine but from a nearby location." *Id.* at *3. Although the court held that the "pre-update label's reference to 'Water From The Widow Jane Mine' was misleading," it nevertheless dismissed

15

plaintiffs' claims because the alleged misstatement "was not misleading 'in a material way,' as is required for liability under GBL §§ 349-50." *Id.* Similarly, in *Pichardo*, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020), Judge Caproni dismissed another food false-labeling action partly because the plaintiffs failed to allege any well-pleaded facts that showed the materiality of the alleged misstatement. *Id.* at *6 ("Plaintiffs have not explained why the amount of vanilla taste coming from vanilla extract is material."). Similar to *Pichardo* and *Boshnack*, the "Complaint contains no allegations that explain why a reasonable consumer would consider it material" (*Boshnack*, 2020 WL 3000538, at *3) whether a teaspoon of original powdered coffee creamer weighs 2.6 grams or 2 grams, when regardless of the answer the package contains the promised overall amount of coffee creamer *and* the promised number of 2-gram servings. It goes without saying that consumers do *not* meticulously follow the serving size when they use the product, so there is no basis to allege that the precise weight of a labeled serving size is material to the purchasing decision at all. But if it were, the product delivers precisely what is promised. As a result, plaintiffs do not state a claim based on the theory that the products allegedly mislead consumers about the weight of a teaspoon.

## II.     The Breach-Of-Warranty Claim Also Fails Because Plaintiffs Did Not Buy The Product Directly From Nestlé.

Plaintiffs cannot state a breach-of-express-warranty claim against Nestlé for the additional reason that they are not in privity with Nestlé. "[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured." *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290 (S.D.N.Y. 2014) (dismissing false-advertising claim because plaintiff did not buy the product directly from the defendant) (citing *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (Rakoff, J.)); *see also DiBartolo v. Abbott Labs*, 914 F.Supp.2d 601, 624-25 (S.D.N.Y. 2012)

("Privity is normally an essential element of a cause of action for express warranty, but the U.C.C. includes a personal injury exception.") (internal citation and quotation marks omitted).

Here, plaintiffs allege that they bought the coffee creamer from third-party retail stores, not Nestlé. FAC ¶¶ 14-17 (alleging that plaintiffs bought the coffee creamer from "a Food Universe Marketplace," a "Family Dollar store," a "Columbus Foodmarket store," and a "Key Food store"). Because plaintiffs are not in privity with Nestlé and do not "claim[] to have been personally injured" (*Koenig*, 995 F.Supp.2d at 290), the warranty claim fails as a matter of law.

Nestlé acknowledges that several decisions, including this Court's decision in *Cooper v. Anheuser-Busch, LLC*, 2021 WL 3501203, at *16 (S.D.N.Y. Aug. 9, 2021), conclude that New York law permits a plaintiff not in privity with the defendant to sue for breach of express warranty. These decisions typically trace their origin to *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y. 2d 5 (1962), which held that, as of 1962, New York's "statutes sa[id] nothing at all about privity." *Id.* at 16 (dispensing with the privity requirement under New York common law). In 1975, the Legislature adopted U.C.C. § 2-313, which provides in pertinent part that "[e]xpress warranties by the seller are created" by "[a]ny affirmation of fact or promise made by the seller *to the buyer*…" N.Y. U.C.C. § 2-313 (bold added). As Judge Rakoff recognized in *Ebin*, this UCC enactment "displaced" *Randy Knitwear* by requiring privity for a breach-of-express-warranty claim. 2013 WL 12324398, at *6. Following the UCC enactment, several New York appellate courts have concluded that an express-warranty claim requires privity. *See, e.g.*, *Carcone v. Gordon Heating & Air Conditioning, Inc.*, 212 A.D. 1017, 1018 (N.Y. 4th Dep't 1995) ("Privity is also an essential element of a cause of action for express warranty."); *Doulman v. Sears Roebuck & Co.*, 85 A.D. 2d 707 (N.Y. 2d Dep't 1981) ("Section 2-318, as it existed at the time plaintiffs' cause of action accrued, required privity between a plaintiff and a defendant in a breach of warranty action.");

*Mftrs. & Traders Trust Co. v. Stone Conveyor*, 91 A.D. 2d 849, 850 (N.Y. 4th Dep't 1982) ("The first and second causes of action are deficient because they fail to allege privity of contract between Welty-Way and Stone, an essential element for causes of action in express and implied warranty."). Nestlé respectfully suggests the better-reasoned view requires privity between the plaintiff and the defendant under these circumstances.

## III.    The Fraud Claim Also Fails Because Plaintiffs Do Not Plausibly Allege Scienter.

As explained in Section I, the fraud claim (and all of plaintiffs' other remaining claims) fail as a matter of law because plaintiffs do not plausibly allege anything false or misleading about the labeling of the products they bought. The fraud claim also fails for the additional reason that plaintiffs fail to plausibly allege (and cannot allege) "an intent to defraud." *E.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 472 (S.D.N.Y. 2020). Plaintiffs allege in conclusory terms that the allegedly "false and misleading representations and omissions . . . were intended to and actually induced Plaintiffs . . . to purchase the Products" *E.g.*, FAC ¶ 53. But no well-pleaded facts support that conclusory allegation of scienter. At one point, plaintiffs attempt to use the "prominen[ce]" (FAC ¶ 10) of the number-of-servings statements to satisfy their burden of "alleg[ing] facts giving rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290; *Budhani v. Monster Energy Co.*, 527 F.Supp.3d 667, 687 (S.D.N.Y. 2021). But nothing about the label plausibly shows an intent to defraud. If anything, plaintiffs' allegations echo *Hesse*, which recognized that a manufacturer's labeling statements (even if allegedly misleading) do not plausibly show the manufacturer's scienter. 463 F.Supp.3d at 473. Simply put, it is not enough for plaintiffs to "couple[] a factual statement with a conclusory allegation of fraudulent intent." *Id.* (quoting *Greene v. Gerber Prods. Co.*, 262 F.Supp.3d 38, 73 (E.D.N.Y. 2017)). That's especially true where, as here, the alleged deceptive statement (a 2-gram serving) comes directly from

governing FDA regulations about the amount of powdered coffee creamer consumed by the average consumer. *See* pages 7-8, *supra*.

Nor does plaintiffs' allegation that the allegedly false statements "were made with knowledge of their falsehood" (FAC ¶ 52) satisfy the requirement of plausibly alleging scienter. In *Turk*, this Court recently held that a plaintiff fails to plausibly allege facts that give rise to a "strong inference" of scienter where the complaint alleges "in a conclusory fashion that a manufacturer-defendant knew a statement on its product's label was not accurate." 2022 WL 836894, at *13 (collecting authority that "routinely dismiss fraud claims based on allegations which closely mirror the allegations in the FAC," including *Dashnau v. Unilever Mfg. (US), Inc*., 529 F. Supp. 3d 235, 249–50 (S.D.N.Y. 2021) and *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021)). Plaintiffs allege the same conclusory allegation here, and consequently, the same outcome—dismissal—should obtain here.

## CONCLUSION

For the reasons explained above, this action should be dismissed with prejudice.

Dated: April 29, 2022                    Respectfully submitted,

                                         MAYER BROWN LLP


                                         By: */s/ Dale J. Giali*
                                         _____
                                             Dale J. Giali (*pro hac vice*)
                                             Keri E. Borders (*pro hac vice*)
                                             *dgiali@mayerbrown.com*
                                             *kborders@mayerbrown.com*
                                             350 South Grand Avenue, 25th Floor
                                             Los Angeles, California  90071-1503
                                             Telephone:  (213) 229-9500
                                             Facsimile:  (213) 625-0248

                                             Attorneys for Defendant